# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| KARA WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | )  CASE NO. 3:05-0496 |
| v. | )  JUDGE TRAUGER/KNOWLES |
| | ) |
| | ) |
| WHITE CASTLE SYSTEM, INC., | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

This matter is before the Court upon Defendant's Motion for Summary Judgment.  Docket Entry No. 30-1.  Along with that Motion, Defendant has submitted a supporting Memorandum of Law (Docket Entry No. 31), a Statement of Undisputed Facts (Docket Entry No. 32), and the Declarations of Eddie Smith (Docket Entry No. 30-2), Kelly Eddings (Docket Entry No. 30-3), Mike Taylor (Docket Entry No. 30-4), Candice Payne (Docket Entry No. 30-5), Denise Bailey (Docket Entry No. 30-6), Shannon Bean (Docket Entry No. 30-7), Antonio Hawk (Docket Entry No. 30-8), and Tyrone Rogers (Docket Entry No. 30-9).  Defendant has additionally submitted excerpts from the Depositions of Kara Williams (Docket Entry Nos. 30-10-12), Sheila Hopkins (Docket Entry No. 30-13), and Linda Williams (Docket Entry No. 30-14).

Plaintiff has not responded to Defendant's Motion or to Defendant's Statement of Undisputed Facts.

1

Plaintiff filed this action pursuant to "Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pregnancy Discrimination Act, and the Tennessee Human Rights Act as set forth at TCA § 4-21-101 et seq., for damages suffered as a result of Defendant's sex and pregnancy discrimination."[1] Docket Entry No. 1. Plaintiff avers that she was subjected to a hostile work environment that was "precipitated by [her] pregnancy, and complications associated therewith."[2] *Id.* Plaintiff seeks compensatory and punitive damages, costs, attorneys' fees, and "prospective and equitable relief such as the Court may deem proper." *Id.*

Defendant filed an Answer denying liability on August 30, 2005. Docket Entry No. 3.

Defendant filed the instant Motion for Summary Judgment and accompanying submissions on September 12, 2006. Defendant argues that Plaintiff cannot establish her prima facie claims of sex and pregnancy discrimination because she admits that any allegedly discriminatory conduct was "the result of her supervisors' frustration with repeatedly redoing the weekly schedule time and time again, after Plaintiff repeatedly called out from work," and "not the result of any pregnancy-based animus toward her." Docket Entry No. 31, p. 2. Defendant further argues, "Although Plaintiff alleges she was discriminated against when her supervisors called to inquire when she would return to work from sick leave and 'wanted' her to set the grill, these acts simply do not rise to the level of adverse employment actions." *Id.*

---

[1]Plaintiff was represented by counsel at the time that she filed her Complaint. *See* Docket Entry No. 1. Plaintiff's counsel subsequently filed a Motion to Withdraw (Docket Entry No. 40), that was granted by Judge Trauger (Docket Entry No. 41). Plaintiff has not retained new counsel and is now proceeding pro se.

[2]Plaintiff's Complaint additionally contains a pendent state law claim of Intentional Infliction of Emotional Distress, that was dismissed with prejudice in an "Agreed Stipulation of Dismissal Order" (Docket Entry No. 21) entered April 4, 2006.

With regard to Plaintiff's claim that she was subjected to a hostile work environment, Defendant argues that Plaintiff cannot establish the requisite elements because she "admits none of the alleged harassment was the result of any pregnancy-based animus," and because "the alleged harassing conduct was infrequent and limited in duration, was not objectively hostile or threatening and simply did not affect Plaintiff's work performance." Docket Entry No. 31, p. 2.

Finally, Defendant maintains, "Plaintiff's claim fails as a matter of law because she failed to utilize [Defendant's] harassment/complaint procedure to complain of any alleged harassment while employed by [Defendant]." Docket Entry No. 31, p. 3.

For the reasons set forth below, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket Entry No. 30-1) be GRANTED.

## II.   Undisputed Facts[3]

Plaintiff was employed by Defendant as an Assistant General Manager ("AGM") at the Broadway restaurant location in Nashville, Tennessee. Docket Entry Nos. 30-10-12, Deposition of Kara Williams ("Plaintiff's Dep."), pp. 29, 31. As an AGM, Plaintiff was "second in charge" over the restaurant. *Id.*, p. 34. Plaintiff reported to General Manager ("GM") Kelly Eddings and District Manager ("DM") Mike Taylor. *Id.*, p. 38. In GM Eddings' absence, Plaintiff was responsible for the overall daily operations of the restaurant. *Id.*, p. 34. Plaintiff had the authority to schedule employees and assign employees tasks and work stations. *Id.*, p. 35. Plaintiff was also responsible for communicating Defendant's company policies and procedures to employees, and for training new employees with respect to those policies and procedures. *Id.*, p. 37.

---

[3]Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

3

Plaintiff learned that she was pregnant around November 13, 2003, and notified GM Eddings shortly thereafter. Plaintiff's Dep., pp. 80, 84. Plaintiff continued to work for approximately one week, but then began "calling out" from work because of complications with her pregnancy. *Id.*, pp. 80, 82.

On November 21, 2003, Plaintiff's physician issued her a note indicating that she could not work until November 22, 2003. Plaintiff's Dep., p. 93. On November 22, 2003, Plaintiff obtained another physician's note indicating that she should not return to work until November 25, 2003. *Id.* On November 24, 2003, Plaintiff secured a third physician's note indicating that she should not return to work until December 2, 2003. *Id.*, p. 94. On December 1, 2003, Plaintiff obtained a fourth physician's note indicating that she should not return to work until December 10, 2003. *Id.*, p. 95. Plaintiff, however, did not return to work on December 10. *Id.*, p. 96.

Managers in Defendant's locations draft employee schedules on a weekly basis and post them each Thursday for the following work week. Plaintiff's Dep., p. 115. GM Eddings relied upon each of Plaintiff's physicians notes when creating the weekly schedules. Docket Entry No. 30-3, Declaration of Kelly Eddings ("Eddings Decl."), ¶ 6. GM Eddings scheduled Plaintiff based upon her physician release dates, and changed the schedule at the last minute as Plaintiff submitted each additional physician note. *Id.* Other employees were required to "pick up hours" they had not originally been scheduled to work at the last minute in order to cover for Plaintiff. *Id.*

On or about December 3, 2003, Plaintiff submitted a physician's note indicating that she was on "bed rest until further notice." Plaintiff's Dep., p. 96. On December 17, 2003, Plaintiff submitted a physician's note releasing her to return to work on January 2, 2004. *Id.*, p. 98, Ex. 11.

4

Plaintiff was off work from November 21, 2003, until January 2, 2004, during which time Defendant paid Plaintiff pursuant to its sick leave policy. Plaintiff's Dep., pp. 89, 91. Plaintiff returned to work from medical leave and resumed her position as an AGM on or about January 2, 2004. *Id.*, p. 99. Plaintiff alleges that, on January 3, 2004, DM Taylor "wanted her to set the grills."[4] *Id.*, pp. 74, 77. Plaintiff did not "set the grill"; instead, employee Denise Bailey did. *Id.*, p. 77.

After returning from medical leave, Plaintiff worked two days and then took vacation. Docket Entry No. 30-4, Declaration of Mike Taylor ("Taylor Decl."), ¶ 7. On January 8, 2004, while on vacation, Plaintiff suffered a miscarriage. Plaintiff's Dep., p. 100. Defendant provided Plaintiff with medical leave following her miscarriage. *Id.*, p. 106. Plaintiff maintained her full title, pay, benefits, responsibilities, and authority; she returned to work as an AGM on or about January 20, 2004. *Id.*, pp. 106-107, 114-115.

Plaintiff continued to work as an AGM at the Broadway Street location until April 2004, when she voluntarily requested a demotion in order to return to college. Plaintiff's Dep., pp. 115, 141. DM Taylor attempted to persuade Plaintiff to remain working as an AGM, but Plaintiff declined. *Id.*, p. 141; Taylor Decl., ¶ 11. Plaintiff indicated that she could not remain a member of the management team because her work schedule would be limited by her school schedule. Taylor Decl., ¶ 11. Defendant honored Plaintiff's request for a demotion, but convinced her to remain a member of the management team as an Assistant Crew Manager ("ACM"), which accorded Plaintiff the opportunity to retain management benefits, some management authority, and a higher hourly wage. *Id.*

---

[4]"Setting the grill" consists of standing at the grill, laying out onions, putting hamburger patties on the grill, and putting buns out on the counter. Plaintiff's Dep., p. 76.

Plaintiff enrolled at Hopkinsville Community College in April 2004. Plaintiff's Dep., pp. 18-19. Plaintiff also began working for Sunrise Community of Tennessee ("Sunrise") in April 2004. *Id.*, p. 195. During that time, Plaintiff spent fifteen hours per week at school, worked twenty-five to thirty hours per week at Defendant's restaurant, worked twenty-four to thirty hours per week at Sunrise, and had approximately ten hours per week of homework to complete. *Id.*, pp. 200-202. Plaintiff informed Sunrise that she was leaving her employment with Defendant to attend school. *Id.*, pp. 203-204, Ex. 19.

Plaintiff tendered her voluntary resignation to Defendant on or about May 15, 2004, and gave Defendant a two-week notice. Plaintiff's Dep., 163-164, Ex. 14. That same evening, Plaintiff told DM Taylor that she had to leave work early to pick up her mother from the airport. Taylor Decl, ¶ 12. Plaintiff became argumentative with DM Taylor on the telephone. Plaintiff's Dep., p. 165. As a result, DM Taylor told Plaintiff that she did not need to work the duration of her two-week notice; Plaintiff's final day of employment was May 15, 2004. Plaintiff's Dep., pp. 165, 169-170; Taylor Decl., ¶ 12.

Several other employees were pregnant and took medical leave related to their pregnancy while working at Defendant's Broadway Street location for GM Eddings and DM Taylor. Plaintiff's Dep., pp. 42-44.

Plaintiff gave DM Taylor a card thanking him for being so understanding with respect to her pregnancy and miscarriage. Plaintiff's Dep., pp. 237-238, Ex. 20; Taylor Decl., ¶ 10.

### III. Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

6

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than ten (10) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty (20) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

As has been noted, Defendant filed the pending Motion on September 12, 2006. Docket Entry No. 30-1. Plaintiff has failed to respond to Defendant's Motion. Pursuant to Local Rule 7.01(b), Plaintiff's failure to file a timely response "indicate[s] that there is no opposition to the motion."

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has likewise failed to respond to Defendant's Statement of Undisputed Facts (Docket Entry No. 32). Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no disputed facts in the case at bar. Because this case presents no disputed facts, there is no genuine

7

issue as to any material fact, and all that remains to be determined is whether Defendant is entitled

to a judgment as a matter of law.

### B.  Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has

failed to respond.  *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998).

As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the
> movant simply because the adverse party has not responded.  The
> Court is required, at a minimum, to examine the movant's Motion for
> Summary Judgment to ensure that he has discharged [his initial]
> burden ...  The federal rules require that the party filing a Motion for
> Summary Judgment "always bears the burden of demonstrating the
> absence of a genuine issue as to a material fact."

*Id.* (citations omitted).  The Court will, therefore, consider whether Defendant has met its burdens

under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law."  A dispute is "genuine" only if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for Summary Judgment, the moving party must meet the

burden of proving the absence of a genuine issue as to material fact concerning an essential element

of the opposing party's claim.  *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.

Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  In

8

determining whether the moving party has met its burden, the Court must view the evidence in the

light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,*

475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations

or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth

specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails

to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial, there is no genuine issue as to any

material fact because a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct.

at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment

as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533,

537-38 (6th Cir. 1999).

## C. The Case at Bar

Plaintiff, in her Complaint, avers that Defendant discriminated against her because of her sex

and pregnancy and subjected her to a hostile work environment. Docket Entry No. 1.

Title VII of the Civil Rights Act of 1964 protects employees from discrimination on the basis

of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer–
>
> (1) to fail or refuse to hire or to discharge any individual, or
> otherwise to discriminate against any individual with respect to his
> compensation, terms, conditions, or privileges of employment,
> because of such individual's race, color, religion, sex, or national
> origin; or

9

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

A prima facie claim of race or gender discrimination under Title VII requires a plaintiff to establish the following:

1.   He or she is a member of a protected class;

2.   He or she was qualified for the job and performed it satisfactorily;

3.   Despite his or her qualifications and performance, he or she suffered an adverse employment action;[5] and

4.   He or she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside the protected class.

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000). *See also Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). (Footnote added.)

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

---

[5]An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

10

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

With regard to Plaintiff's allegations that she was subjected to a hostile work environment, Plaintiff must demonstrate, *inter alia*, that Defendant's conduct was "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). In analyzing this latter issue, courts should consider "the frequency or the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993).

11

Although Plaintiff avers that Defendant discriminated against her on account of her sex and pregnancy, and subjected her to a hostile work environment, she has failed to adduce *any* affirmative evidence, in a form required by Fed. R. Civ. P. 56, to support those allegations. As discussed above, Plaintiff has not responded to the instant Motion and Plaintiff has not submitted *any* evidence in a form required by Fed. R. Civ. P. 56 to support her claims. Plaintiff bears the burden of demonstrating that there is a genuine issue for trial. Plaintiff has failed to do so. Because Plaintiff has offered no evidence whatsoever concerning her claims, she has failed to establish her prima facie claims. Accordingly, Defendant is entitled to a judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, the undersigned concludes that there is no genuine issue as to any material fact, and that Defendant is entitled to a judgment as a matter of law. Therefore, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket Entry No. 30-1) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

12