# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

KARA WILLIAMS,             )
                               )
        **Plaintiff,**       )
                               )
                               )     **CASE NO. 3:05-0496**
**v.**                           )     **JUDGE TRAUGER/KNOWLES**
                               )
                               )
WHITE CASTLE SYSTEM, INC.,     )
                               )
        **Defendant.**     )

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

This matter is before the Court upon Defendant's Motion for Sanctions pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 Sanctions (Docket No. 34), with correspondence attached as Exhibits A-J (Docket Nos. 34-1 through 34-10) and a supporting Memorandum of law (Docket No. 35).  Plaintiff has filed a Response in opposition to the Motion (Docket No. 38), with excerpts from the deposition of Plaintiff Kara Williams (Docket No. 38-2, Ex. A), Defendant's Rule 26 Initial Disclosures (Docket No. 38-3, Ex. B-1),  Defendant's Supplemental Rule 26 Initial Disclosures (Docket No. 38-3, Ex. B-2),  Defendant's Responses to Plaintiff's First Set of Requests For Production of Documents (Docket No. 38-4, Ex. C), and an Affidavit of Plaintiff's counsel (Docket No. 39).  Pursuant to the Court's Order (Docket No. 50), Defendant subsequently filed the complete transcript of Plaintiff's deposition (Docket Nos. 54-2, 54-3, 54-4).

1

Plaintiff filed this action alleging sex and pregnancy discrimination pursuant to Title VII of the Civil Rights Act of 1964, the Pregnancy Discrimination Act, and the Tennessee Human Rights Act as set forth at TCA § 4-21-101 *et seq.* Docket No. 1. Plaintiff's Complaint also contained a pendent state law claim for intentional infliction of emotional distress. *Id.* Defendant filed an Answer denying liability on August 30, 2005. Docket No. 3.

In its sanctions motion, Defendant argues that Plaintiff violated Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 on four different occasions: (1) when she filed her Complaint, because her pregnancy discrimination claim was frivolous and without supporting evidence, and because her state law claim of intentional infliction of emotional distress was barred by the statute of limitations; (2) when she filed her first Motion for Leave to Amend the Complaint seeking to add state law claims of malicious harassment and outrageous conduct which were barred by the statute of limitations; (3) when she filed her Supplemental Motion for Leave to Amend the Original Complaint seeking to add claims of constructive discharge and retaliation even though she had failed to exhaust her administrative remedies on these claims, and seeking to add a claim under 42 U.S.C. § 1983, which could not be maintained against Defendant as a private employer; and (4) when she refused to withdraw her pregnancy based discrimination claim after she testified in her deposition that "she had not been subject to any actual adverse employment action." Docket No. 35, p. 1-2. Defendant also states that it gave Plaintiff numerous opportunities to dismiss her claim before filing the instant motion. *Id.* at pp. 5-6.

Defendant argues that both Plaintiff and her attorney should be sanctioned, pursuant to Fed. R. Civ. P. 11, and required to pay its costs, expenses and attorneys' fees incurred in responding to Plaintiff's frivolous pleadings and claims. Defendant further submits that Plaintiff's attorney should

2

be ordered to pay the excess costs, expenses and attorneys' fees that his unreasonable conduct forced Defendant to incur, pursuant to § 1927. *Id.*

Plaintiff's attorney argues that he acted reasonably under the circumstances and had legitimate reasons for the legal arguments he made. He submits that his actions were supported by the facts as he knew them at the time and his interpretation of the law applicable to those facts. He further argues that, had he known the testimony of Defendant's witnesses earlier, he "would have attempted to withdraw from the case then." Docket No. 38-1.

On September 12, 2006, Defendant filed a Motion for Summary Judgment, arguing that Plaintiff had not established her prima facie claims of sex and pregnancy discrimination. Docket No. 31. On September 19, 2006, Defendant filed the instant Motion for sanctions. Docket No. 34. On October 2, 2006, Plaintiff's attorney filed his first Motion to Withdraw as her counsel, which was denied by the Court the next day. Docket Nos. 36 and 37. On October 6, 2006, Plaintiff's attorney filed a response to the sanctions motion. Docket No. 38. On the same day, Plaintiff's attorney filed his second Motion to Withdraw as her counsel, which was granted on October 19, 2006. Docket Nos. 40 and 41.

Plaintiff did not respond to Defendant's Motion for Summary Judgment. The undersigned recommended to Judge Trauger that Defendant's summary judgment motion be granted. Docket No. 45. On April 16, 2007, Judge Trauger granted the summary judgment motion. Docket No. 47. She subsequently vacated that Order pending the undersigned's ruling on the instant Motion for Sanctions. Docket No. 48.

Plaintiff has not retained new counsel and has been proceeding *pro se* since her attorney withdrew on October 19, 2006.

For the reasons set forth below, the undersigned recommends that Defendant's Motion for Sanctions (Docket No. 34) be GRANTED IN PART and DENIED IN PART.

As will also be apparent from the discussion below, it appears that Defendant's counsel may have violated Rule 11 by making arguments in the instant Motion which, while they may appear to be supported by Defendant's selective quotations from Plaintiff's deposition, are plainly not supported by the facts or the record in this case. The Court will address this issue in a separate Order.

## II. Relevant Facts

Plaintiff's Complaint filed June 22, 2005, contains the following allegations:

> 1. This is a civil action brought under the authority of Title VII of the Civil Rights Act of 1964, the Pregnancy Discrimination Act, and the Tennessee Human Rights Act as set forth at T.C.A. § 4-21-101 *et seq.,* for damages suffered as a result of Defendant's sex and pregnancy discrimination, and pendent State law causes of action intentional and/or negligent infliction of emotional distress [*sic*].
>
> . . .
>
> 5. Specifically, for cause of action, Plaintiff avers that she was employed with the Defendant as Assistant General Manager from 1999 until 2004. Plaintiff became pregnant and notified the Defendant. Thereafter, she was subjected to negative harassing remarks and disparate terms and conditions of employment. Plaintiff had complications with the pregnancy, and was off work due to doctor's orders requesting bed rest. Plaintiff was requested to return to work, despite the doctor's orders of bed rest. When Plaintiff returned to work, she was restricted to taking breaks when needed, and no bending or lifting. The Defendant wanted the Plaintiff to demote herself to set grills, which Plaintiff could not perform given her pregnancy. As a resulting of returning back to work, the Plaintiff had complications and was taken to the hospital, wherein she eventually had a miscarriage;
>
> . . .

4

7.  The above constitutes a hostile environment precipitated by
Plaintiff's pregnancy, and complications associated therewith;

. . .

9.  The Defendant's sex discrimination practices as alleged herein
have caused Plaintiff to suffer severe emotional distress and mental
anguish, as well as physical pain and suffering, and other maladies
which Plaintiff has experienced as a result of her having to cope
with Defendant's sex discrimination; and,

10.  The Defendant's sex discrimination practices as alleged herein
have also caused the Plaintiff to suffer a loss of other employment
benefits and job opportunities.

Docket No. 1.

Plaintiff's deposition was taken by Defendant's counsel on January 12, 2006.  Docket  No.

38-2, Ex. A. Three days later, January 15, 2006, Plaintiff filed a first Motion for Leave to Amend

the Original Complaint, seeking to add claims of malicious harassment and outrageous conduct to

her Complaint. Plaintiff stated that the "claims arose out of the same conduct, transactions, or

occurrences set forth in the Original Complaint pursuant to Rule 15(c)(2) of the Federal Rules of

Civil Procedure." Docket No. 15, ¶¶ 1 and 2.

On the same day, Plaintiff filed a Supplemental Motion for Leave to Amend the Original

Complaint, seeking to add claims of constructive discharge, retaliation and 42 U.S.C. § 1983 equal

protection to her Complaint. Plaintiff stated that all of the "claims arose out of the same conduct,

transactions, or occurrences set forth in the Original Complaint" and the first request to amend the

Complaint, pursuant to Federal Rule of Civil Procedure 15(c)(2). Docket No. 16, ¶¶ 1 and 2.

Prior to responding to Plaintiff's motions to amend, Defendant's counsel requested that

Plaintiff voluntary withdraw both motions.  Docket Nos. 34-1and 34-2, Exs. A and B. In doing so,

Defendant's attorney provided Plaintiff's attorney with an analysis of the relevant law addressing

the frivolous nature of the claims Plaintiff sought to add to her Complaint. Defendant's attorney told Plaintiff's attorney that she would seek sanctions in the event Plaintiff pursued the claims raised in her motions to amend. *Id*. Plaintiff did not withdraw the motions, and Defendant filed a single response and objections to both motions to amend on January 26, 2006. Docket No. 17.

Judge Trauger denied both of Plaintiff's motions to amend as futile. Docket Entry No. 18. Relating to the claims for malicious harassment and outrageous conduct, the Court stated that, even if the claims were to relate back to the filing of the original lawsuit, the Plaintiff's last day of employment with the Defendant was more than one year prior to that date so that the one-year statute of limitations had expired by the time of the filing of the original lawsuit. In addition, the Court noted that Plaintiff's pursuit of a pregnancy harassment claim was not legally viable as malicious harassment, which is only properly based upon race, color, religion, ancestry or national origin. *Id.* at p. 1-2. The § 1983 equal protection claim was denied as futile because such a claim "only lies against a state actor, not a private employer, as the defendant is here." *Id*. at p. 2. The constructive discharge and retaliation claims were denied because Plaintiff failed to exhaust the required administrative remedies before bringing such claims to court. *Id.*

Between January 17, 2006, and March 27, 2006, Defendant's counsel repeatedly requested that Plaintiff withdraw her pregnancy-based discrimination and intentional infliction of emotional distress claims. Docket Nos. 34-1 to 34-8, Exs. A-H. Specifically, on January 23, 2006, Defendant's attorney sent Plaintiff's attorney a letter providing him 21 days to withdraw his allegedly frivolous pleadings. Docket No. 34-2, Ex. B. The letter referred to an enclosed Rule 11 motion for Plaintiff's review. *Id.* Defendant's attorney gave Plaintiff an "extension of time" to respond to its Rule 11 Motion before filing it with the Court. Docket Nos. 34-3 and 34-4, Exs. C and D.

6

On March 9, 2006, after providing Plaintiff's attorney with several "extensions" to the 21-day deadline, Defendant's attorney sent a letter to Plaintiff's attorney memorializing his alleged verbal agreement to withdraw Plaintiff's intentional infliction of emotional distress claim and enclosing a Stipulation of Dismissal. The letter also memorialized Plaintiff's failure to agree to withdraw her discrimination claim. Defense counsel further provided Plaintiff's attorney with a detailed analysis of the proof necessary to support a claim of pregnancy-based discrimination and explained how Plaintiff's allegations fell short of establishing such a claim. Docket Nos. 34-6 and 34-7, Exs. F and G.

On March 27, 2006, after not receiving a response from Plaintiff's attorney, Defendant's counsel sent another letter asking that he give consent to file the Stipulation of Dismissal with respect to Plaintiff's intentional infliction of emotional distress claim and again requesting that Plaintiff withdraw her pregnancy-based discrimination claim to avoid a sanctions motion. Docket No. 34-8, Ex. H.

On March 31, 2006, Plaintiff agreed to withdraw her intentional infliction of emotional distress claim but did not address the pregnancy discrimination claim. Docket No. 34-9, Ex. I. On April 3, 2006, the parties submitted an "Agreed Stipulation of Dismissal with Prejudice," which dismissed the intentional infliction of emotional distress claim. Docket No. 19. That stipulation was entered April 4, 2006. Docket No. 21.

On April 10, 2006, Defendant's counsel sent Plaintiff's attorney a second Rule 11 "safe harbor" letter providing Plaintiff with 21 days to withdraw her pregnancy-based discrimination claim. Docket No. 34-10, Ex. J. Plaintiff's pregnancy-based discrimination claim was not

7

withdrawn. Approximately five months later, Defendant filed its summary judgment motion and then the instant sanctions motion.  Docket Nos. 30 and 34.

### III.   Analysis

### A.  Federal Rule of Civil Procedure 11

It is unnecessary for the Court to discuss Defendant's Rule 11 arguments in detail, because the Court concludes that Defendant has failed to show it complied with the basic prerequisite for filing a Rule 11 Motion.  The "safe harbor" provision of Rule 11 provides in relevant part as follows:

> **(c) Sanctions.**   If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, *subject to the conditions stated below,* impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>
> **(1) How initiated.**
>
> **(A) By Motion.**  A motion or sanctions under this Rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  *It shall be served as provided in Rule 5*, but shall not be filed with or presented to the court unless, within twenty-one days after service of the motion (or such other period as the court may prescribe), the challenge, paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

(Emphasis added.)

The "safe harbor" provisions of Rule 11 were added in 1993.  The Advisory Committee comments to the 1993 amendments state in part, "To stress the seriousness of a motion for sanctions and to define precisely the conduct claim to violate the rule, the revision provides that the 'safe harbor' period *begins to run only upon service of the motion.*"  (Emphasis added.)

8

The Sixth Circuit extensively discussed the safe harbor provisions of Rule 11 in *Ridder v.*

*City of Springfield*, 109 F.3d 288 (6th Cir. 1997). The *Ridder* Court stated in part as follows:

> In accord with the amended rule, a party seeking sanctions must follow a two-step process: *first, serve the Rule 11 motion on the opposing party for a designated period* (at least twenty-one days); *and then file the motion with the court.*
>
> . . .
>
> Rule 11 cases emerging in the wake of the 1993 amendments have found the "safe harbor" provision to be an absolute requirement. . . We agree that the rule is unquestionably explicit with respect to this issue. *The plain language of Rule 11 specifies that unless a movant has complied with the twenty-one day "safe harbor" service, the motion for sanctions "shall not be filed with or presented to the court."*
>
> . . .
>
> In sum, adhering to the rule's explicit language and overall structure, we hold that sanctions under Rule 11 are unavailable unless *the motion for sanctions is served on the opposing party* for the full twenty-one day "safe harbor" period before it is filed with or presented to the court . . . .
>
> . . .
>
> By filing a motion for sanctions without previously having *served the motion on the opposing party* for the designated period . . . , Springfield failed to afford Ridder's counsel the twenty-one day "safe harbor" period mandated by the 1993 revised rule.

109 F.3d at 296-97 (emphasis added, citations omitted).

9

In the case at bar, Defendant has failed to show that it served "the Motion" that it filed with the Court to Plaintiff's counsel more than twenty-one days prior to the filing of that Motion, and Defendant never even argues that it did.[1]

Defendant filed several letters from its counsel to Plaintiff's counsel that do bear on the safe harbor issue. Docket Nos. 34-2, 34-3, 34-5, 34-6, 34-8, 34-9, 34-11. None of these letters, however, supports the proposition that Defendant served the Rule 11 Motion that it actually filed with the Court upon Plaintiff's counsel twenty-one days or more prior to the filing of that Motion. While two of the letters refer to an enclosed Motion for Sanctions under Rule 11 (and 28 U.S.C. § 1927), none of those letters specifically refers to the actual Motion that was filed with the Court. Docket Nos. 34-3, 34-11. Based upon the record before this Court, it seems clear that the "draft" Motions referred to in those two letters are not the same Motion that was actually filed with the Court.[2]

Given the plain language of Rule 11, the Advisory Committee comments, and the Sixth Circuit's decision in *Ridder*, the Court concludes that Defendant has not complied with the safe harbor provisions of Rule 11.[3]

---

[1] Defendant argues, "In support of this Motion, Defendant states that it provided Plaintiff with repeated opportunities to withdraw her frivolous pleadings and claims at least twenty-one days prior to filing the instant Motion." Docket No. 34-1, p. 2.

[2] Defendant's counsel's letter dated January 23, 2006, apparently enclosed a Motion for Rule 11 Sanctions with regard to Plaintiff's two Motions for Leave to Amend the Complaint. Docket No. 34-3. Defendant's counsel's letter dated April 10, 2006, apparently enclosed a Rule 11 Motion "with respect to [Plaintiff's] discrimination claim." Docket No. 34-11.

[3] In a post-*Ridder* decision, the Sixth Circuit stated "We conclude that the purpose of the safe harbor provision was complied with in this case by the warning letters [Plaintiff's counsel] received." *Barker v. Bank One*, *Lexington N.A.*, 1998 U.S. App. LEXIS 17834, *8 (6th Cir.). That statement is plainly dicta, however, because Defendants in that case "also served [Plaintiff's counsel] with their Motion for Sanctions 21 days before filing it with the court." *Id.*

10

Moreover, even if Defendant had complied with the safe harbor provisions of Rule 11, Defendant could not recover sanctions for Plaintiff's asserting a claim for intentional infliction of emotional distress in the original Complaint. As the *Ridder* Court stated:

> [T]he 1993 amendments work a significant change in the timing of a Rule 11 Motion. By virtue of the fact that under the 1993 amendments, "a Rule 11 Motion cannot be made unless there is some paper, claim, or contention that can be withdrawn" . . . , it follows that a party cannot wait to seek sanctions until after the contention has been judicially disposed. A party must now serve a Rule 11 Motion on the allegedly offending party at least twenty-one days prior to . . . judicial rejection of the offending contention. If the court disposes of the offending contention before the twenty-one day "safe harbor" period expires, a Motion for Sanctions cannot be filed with or presented to the Court. Any other interpretation would defeat the rule's explicit requirements.

109 F.3d at 295.

As discussed above, counsel for Plaintiff and Defendant submitted an "Agreed Stipulation of Dismissal with Prejudice" regarding the intentional infliction of emotional distress claim on April 3, 2006. The instant Motion for Sanctions was filed September 19, 2006. Thus, Plaintiff's claim for intentional infliction of emotional distress raised in the original Complaint had already been dismissed by the time the instant Motion for Sanctions was filed.

Similarly, Plaintiff's counsel filed the two Motions to Amend the Original Complaint on January 15, 2006. Docket Nos. 15, 16. Defendant's counsel attempted to comply with the safe harbor provisions of Rule 11 by her letter dated January 23, 2006. Even assuming that the January 23 letter and the Motion that was apparently enclosed therewith had complied with the safe harbor provisions, Defendant could not have filed a Motion for Rule 11 Sanctions with regard to the Motions to Amend until twenty-one days after January 23, or February 13, 2006, at the earliest. Judge Trauger, however, denied both Motions to Amend on February 8, 2006. Thus, under *Ridder*,

11

the Court disposed of the offending contentions before the twenty-one day safe harbor period expired.

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Sanctions pursuant to Fed. R. Civ. P. 11 be DENIED.

**B.    28 U.S.C. § 1927**

Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

Under this statute, a district or appellate court may require an attorney to satisfy personally the excess costs, expenses and reasonable attorney fees incurred because of his having multiplied any proceedings unreasonably and vexatiously. *Cook v. Am. S.S. Co.,* 134 F.3d 771, 774 (6th Cir. 1998); *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1212 (6th Cir. 1997). The imposition of these sanctions "does not require a finding of recklessness, subjective bad faith, or conscious impropriety; [however,] an attorney does not have *carte blanche* to burden the federal courts by pursuing claims that he should know are frivolous." *Smith v. Detroit Fed. Of Teachers Local 231*, 829 F.2d 1370, 1379 (6th Cir. 1987) (*quoting Haynie v. Ross Gear Div. Of TRW, Inc.*, 799 F.2d 237, 243 (6th Cir. 1986)). *See also Runfola & Assocs. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996) (a finding of bad faith is not required)[4]; *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th

---

[4] Plaintiff 's counsel misreads *Albert v. Edward J. DeBartolo Corp.*, 1993 WL 272477, at *5 (6th Cir. July 20, 1993), when he states that "imposition of sanctions under § 1927 requires bad faith." Docket Entry No. 38, p. 9.

The Court also notes that several other circuits disagree with the Sixth Circuit's position

Cir. 1992) (simple inadvertence or negligence will not support § 1927 sanctions as it will under Rule 11).

Application of § 1927 is warranted "when an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1049 (6th Cir. 1996) (*quoting In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987); *accord Ridder*, 109 F.3d at 298. A ruling on a motion for sanctions is reviewed for an abuse of discretion. *Cook*, 134 F.3d at 774; *Ridder*, 109 F.3d at 298.

At the outset, it should be noted that there are several major differences between Rule 11 and § 1927. Section 1927 does not contain a "safe harbor" provision. Section 1927 applies only to an "attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof." Thus, Plaintiff herself cannot be sanctioned under § 1927, and the instant Motion, to the extent that it seeks sanctions against Plaintiff herself, should be DENIED. Finally, while Rule 11 allows for the imposition of a wide range of sanctions for its violations, § 1927 provides only one sanction, namely excess costs, expenses and attorneys' fees reasonably incurred because of the unreasonable and vexatious multiplication of the proceedings in a case. *See* Vario*, supra*, at 760-62.

Defendant argues that Plaintiff's counsel violated § 1927 on four separate occasions: – when he filed the Complaint was filed without supporting evidence and containing a state law claim that was barred by the statute of limitations, when he filed two motions to amend containing claims that were both frivolous and barred by the statute of limitations, without legal support for the requested

_____

and do require a showing of bad faith for a § 1927 violation. Georgene M. Vario, **Rule 11 Sanctions** (3d Ed. 2004), p. 760.

13

amendments, and when he failed to withdraw his pregnancy discrimination claim after Defendant notified him it was not supported by her testimony. According to Defendant's supporting Memorandum, Defendant seeks only the costs, expenses, and attorneys' fees "incurred with respect to responding to Plaintiff's intentional infliction of emotion distress claim and pregnancy-based discrimination claim since the filing of Plaintiff's Complaint on June 22, 2005," and the costs, expenses, and attorneys' fees "incurred in responding to Plaintiff's First and Second Motions to Amend/Correct the Original Complaint." These arguments will be discussed in order below.

### 1. The Original Complaint

### A. Evidentiary support for Plaintiff's pregnancy discrimination claims.

As the Sixth Circuit has stated:

> Under the Pregnancy Discrimination Act provisions of Title VII, discrimination because of or on the basis of pregnancy, childbirth, or related medical conditions is defined as a kind of sex discrimination and is prohibited. 42 U.S.C. § 2000e(k). Women who are affected by pregnancy, childbirth or related medical conditions are required to be treated the same, for all employment purposes, as other persons not so affected but who are similar in their ability or inability to work. *Id.*

*Tysinger v. Police Department of the City of Zanesville,* 463 F.3d 569, 572.

A plaintiff may prove a pregnancy discrimination case, like any other Title VII case, either by direct evidence or by circumstantial evidence. If a plaintiff does not have direct evidence of pregnancy-based discriminatory animus, the Court must analyze the case under "the familiar McDonnell Douglas burden-shifting framework." 471 F.3d 588, 592 (6th Cir. 2006). The Sixth Circuit has described this framework as follows:

> First, the employee must present a prima facie case. . . . If the employee is able to present such a case, then the burden shifts to the employer to provide a legitimate, non-discriminatory reason for its

14

adverse employment decision. . . . If the employer is able to do so, the burden shifts back to the employee, who, in order to defeat a motion for summary judgment, must show that the employer's articulated reason was a pretext for intentional discrimination . . .

471 F.3d at 592 (citations omitted).

In order to establish a prima facie case of pregnancy discrimination, a Plaintiff must show that: (1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision. *Prebilich-Holland v. Gaylord Entertainment Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citation omitted).

The instant Motion states Defendant's argument on this point as follows:

"Plaintiff's sex/pregnancy-based discrimination claim is frivolous and a violation of [§ 1927] because Plaintiff's own deposition testimony undeniably establishes she was not subjected to any actual adverse employment action and as a result, she cannot pursue a discrimination claim in good faith."

Docket No. 34-1, p. 1.

In its supporting Memorandum, Defendant argues:

During Plaintiff's deposition, she had an opportunity to provide in detail any evidence of pregnancy-based discrimination. Plaintiff merely alleged: (1) her Supervisors, Mike Taylor and Kelley Eddings, discriminated against her when they called her to ask when she expected to return to work from sick leave; and (2) Taylor discriminated against her when he "wanted" her to set the grills on one occasion. (Dock. No. 1 at ¶ 5; Pl. Dep. 74; 11-23; 77-13-15).

As explained in Defendant's Memorandum Supporting Judgment, such allegations fall far short of the materially adverse employment action necessary to support a discrimination claim. (Dock. No. 31 at pgs. 10-12).

Further, Plaintiff testified that she was never actually subject to any adverse employment action as she did not actually set the grill, or

15

> return to work before being released to do so by her physician. (Pl.
> Dep. 77; 19-23; 99:8-13; Pl. Dep. Ex. 11). What's more, Plaintiff
> testified that she remained employed in her Assistant General
> Manager position ("AGM"), retained her AGM pay, retained her
> AGM benefits, retained her AGM responsibilities and retained her
> AGM authority until she voluntarily requested a demotion to return
> to school in April 2005. (Pl. Dep. 106; 25-107:10; 114:21-115:11).
> Thus it was undeniably apparent as of January 12, 2006, that Plaintiff
> had not been discriminated against because of her pregnancy and any
> such claim was frivolous.

Docket No. 35, p. 4-5.

In support of the instant Motion, Defendant submitted excerpts from Plaintiff's deposition.

In opposition to the instant Motion, Plaintiff also submitted excerpts from her deposition. Because

the Court wished to have a true picture of Plaintiff's testimony, the undersigned entered an Order

requiring Defendant to file a full and complete transcript of the deposition of Plaintiff, including

Exhibits (Docket No. 50), and Defendant did so (Docket No. 51-2 to 51-4). A review of Plaintiff's

deposition shows that some arguments made by Defendant in the instant Motion are simply not

supported by the evidence, and some of the "facts" that underlie Defendant's arguments are simply

not true.

As discussed above, Defendant argues that Plaintiff "merely alleged" two circumstances of

pregnancy-based discrimination: (1) when her supervisors, Mike Taylor and Kelley Eddings,

discriminated against her when they called her to ask when she expected to return to work from sick

leave, and (2) when Mr. Taylor wanted her to set the grill on one occasion.

Plaintiff's deposition, however, reveals at least 15 instances that Plaintiff identified as

discriminatory actions by the General Manager of the restaurant where Plaintiff worked, Ms.

16

Eddings, and the District Manager for that restaurant, Mr. Taylor.[5]  Williams Dep., p. 38.[6]  While

the following instances of discriminatory actions are generally irrelevant to Defendant's argument

that Plaintiff could not and did not establish an "adverse employment action," the Court believes it

is appropriate to list them for the purpose of explaining the truly incredible misrepresentation

Defendant has made in arguing that Plaintiff "merely alleged" two instances of pregnancy-based

discrimination.

> Plaintiff identified the following acts of alleged discrimination by Mr. Taylor:

>> 1.  When Plaintiff first went to the emergency room, and her mother called to tell Mr. Taylor that she was going on bed rest, Mr. Taylor was not concerned about how she was feeling; instead, he made the statement to Plaintiff's mother that "She's grown.  Can't she call for herself?"  Williams Dep., p. 60-61.

>> 2.  When Mr. Taylor got a doctor's note requiring Plaintiff to be on bed rest, he would ask her brother every day, "Is she really laying in bed?  How does she get her food?  How does she go to the bathroom if she's on bed rest?  Does she go anywhere?"  Williams Dep., p. 61.

>> 3.  After Plaintiff's doctor had initially cleared Plaintiff but had kept her on bed rest before she could return either time, Mr. Taylor made the statement, "Why don't she just take the rest of the year off?"  Williams Dep., p. 61.

>> 4.  When Plaintiff returned to work on January 3, 2004, she had medical restrictions of no bending, no lifting, no pushing, and no repetitive movements.  Mr. Taylor told Plaintiff to "set the grill," and Plaintiff told him she could not do so because she was "carrying my

---

[5]  Plaintiff did testify that the only employees of Defendant who discriminated against her were Mr. Taylor and Ms. Eddings.  Williams Dep., p. 51.

[6]  Plaintiff's deposition comprises Docket Nos. 51-2, 51-3, and 51-4.  Each of these pages, however, contains four pages of Plaintiff's deposition.  Thus, the Court will cite to the specific pages of Plaintiff's deposition, rather than to the pages of Docket No. 51.

baby low."[7] Mr. Taylor made the statement, "Many pregnant women have worked for White Castle, and many of them have set grills." Williams Dep., p. 62. Plaintiff, however, did not actually set the grill that day. Williams Dep., p. 77.

5.  On January 6, 2004, after Plaintiff worked her shift, she noticed some "spotting," and decided to go to the emergency room. Plaintiff's mother called to advise Mr. Taylor of that fact and that they might need to find someone to fill her shift. Mr. Taylor stated to Plaintiff's mother that Plaintiff was grown, and that Plaintiff "need[ed] to call for [herself]." Williams Dep., p. 63.

6.  Plaintiff visited her doctor on January 7 and her doctor told her that he would let her return to work for "a couple of hours a day." Plaintiff called Mr. Taylor to advise him of that fact. About three hours later, however, Plaintiff's doctor called and told her, "I don't want you to go back to work. I want you to take leave until you have your baby." She called the restaurant then, but was unable to get anybody. She was able to reach Ms. Eddings on January 8, who told her to call Mr. Taylor. She testified as follows:

> I called Mike, and our conversation went like – he said, "What's up?" And I said, "What's up?" And he told me he wasn't going to play this game with me, that I wasn't going to come to work for three days, be off for three weeks because can't no business run like that. And I asked him what was he saying, what was the game? He referred to my child's life as a game. Williams Dep., p. 63-64.

7.  Plaintiff had a miscarriage on January 8, 2004. The next day Mr. Taylor and Ms. Eddings were talking in the office, and Plaintiff's

---

[7] Plaintiff described setting the grill as follows:

> Well, you have to get the meat our of the freezer. You have to stand over the grill. You have to lay out the onions, and then put the patties on the grill, and then go over, get buns, pull them out, put them on the counter, and then break them apart and extend – 'cause I'm so short, I would have to extend my arm over the grill to set it. Williams Dep., p. 76.

18

brother "overheard them say they didn't know why I was upset because it wasn't a real baby anyway." Williams Dep., p. 64-65.

8. On a previous occasion, Mr. Taylor had advised his stepdaughter that he did not want her to "set grills." His stepdaughter, however, was not "as far along" in her pregnancy as was Plaintiff. Williams Dep., p. 65.

9. At some point, Mr. Taylor came to Clarksville, apparently when Plaintiff was on bed rest per doctor's orders. Mr. Taylor asked an employee where Plaintiff's mother stayed, "to make sure I was really in bed." Plaintiff stated, "He was going to come see if I was really over there in bed." Williams Dep., p. 67-68.

Plaintiff further identified the following acts of alleged discrimination committed by Ms.

Eddings:

1. Ms. Eddings asked her brother if she was "really on bed rest." One day Ms. Eddings asked her brother, "Was I really pregnant[?]" Another day Ms. Eddings asked her brother if he had ever talked to the baby's father, and how did Plaintiff's parents feel "about me being pregnant out of wedlock." Williams Dep., p. 126.

2. Plaintiff had been scheduled to return to work December 10, but Plaintiff's doctor kept her on bed rest. Plaintiff called Ms. Eddings to tell her that she would not be returning and Ms. Eddings, "had, like, did a little huff on the phone, and said whatever and hung up on me." Williams Dep., p. 126-27.

3. Ms. Eddings found out that Plaintiff had gone to a Christmas party at the Clarksville White Castle. Ms. Eddings made the statement that, "If I could go to a Christmas party, that I could come to work." Williams, Dep. p. 127.

4. On January 2, when Plaintiff returned to work after being off for several weeks, Plaintiff asked Ms. Eddings if she could take a five minute break, because her feet were hurting. Plaintiff described what Ms. Eddings said as follows: "[She] told me, no, that wasn't her problem. I shouldn't have got pregnant." Williams Dep., p. 127.

5. When Plaintiff's mother called Ms. Eddings on January 6 to advise Ms. Eddings that Plaintiff was going to the hospital, Ms.

19

> Eddings told an employee to tell Plaintiff's mother that she was not there. Williams Dep., p. 128.
>
> 6. After Plaintiff had her miscarriage, Candice Payne called Ms. Eddings to advise her of that fact. According to Plaintiff, "All she said was okey dokey." Plaintiff took this as a statement that Ms. Eddings did not care about her miscarriage. Williams Dep., p. 137.

During Plaintiff's testimony concerning the allegedly discriminatory acts committed by Mr. Taylor and Ms. Eddings, Defendant's counsel, on two separate occasions, attempted to summarize Plaintiff's testimony. At one point, she stated, "Now we've gone through a number – I think there were *either nine or ten things* that you thought Mike Taylor did specifically to discriminate against you." Williams, Dep., p. 121-22 (emphasis added). At another point, she recapped Plaintiff's testimony concerning Ms. Eddings and listed seven acts of discrimination claimed by Plaintiff. Williams Dep., p. 128-29.

The Court is at a total loss to understand how, in the face of the testimony quoted above, Defendant could possibly state to the Court that Plaintiff "merely alleged" two instances of pregnancy discrimination.

Defendant's main argument is that Plaintiff did not suffer an adverse employment action. Defendant argues, "Plaintiff testified that she was never actually subject to any adverse employment action as she did not actually set the grill, or return to work before being released to do so by her physician." Docket No. 35, p. 4.

Although Defendant has consistently attempted to portray Plaintiff's leaving her job as a resignation because she wanted to return to school, it does not appear that Plaintiff ever testified in

20

her deposition that such was the case.[8]  In fact, it seems very clear that Plaintiff believes she was

"fired."  Plaintiff testified in pertinent part as follows:

> Q. [By Ms. Dohner-Smith] Okay.  All right.  What specifically did
> you tell Bob after you quit White Castle?
>
> A.  Well, I told Bob everything, why I decided – I didn't quit, why I
> was fired and everything.

Williams Dep. p. 180.

> Q. [By Ms. Dohner-Smith] Is that [Exhibit 16] a survey that White
> Castle sends out to pretty much everyone who leaves the company?
>
> A.  Yes.
>
> Q.  Okay.
>
> A.  And I put – 'cause it asked this opinion do you want to be called
> back.  I opted to be called back.
>
> Q.  And you submitted that after you had already quit?
>
> A.  Well, they had sent it in the mail.
>
> Q.  After you quit?
>
> A.  Yes.  I didn't quit; I got fired.

Williams Dep., p. 188

> Q. [By Ms. Dohner-Smith] Okay.  Any other way that you believe
> you've been emotionally damaged.

-----

[8]  As quoted above, Defendant has argued that Plaintiff retained her pay, benefits, responsibilities, and authority as an Assistant General Manager, "until she voluntarily requested a demotion to return to school in April 2005."  Docket No. 35, p. 4.  In support of this factual statement, Defendant cites "Pl. Dep. 106: 25-107:10; 114: 21-115:11."  There is absolutely nothing on these pages to indicate that Plaintiff "voluntarily requested a demotion to return to school in April 2005."

A.  I mean, I can't, you know – I have to select jobs, you know, but once I get a job, I always try to stay within everything.  Just like Castle White [*sic*] I stuck with it.  I would still be there if everything hadn't happened 'cause I loved my job.  That was – I got – I could do everything I wanted.  I got to see people 'cause I'm a people person, like day in, day out.  I had friends there and everything.  I had a great time at my job.

Q.  So you would have stayed at White Castle rather than pursuing a career in the medical field –

A.  Yes.

Q.  – Doing ultrasound career?

A.  Yes, because I had already chose White Castle once before over the medical field.

Q.  So why did you go back to school?

A.  Because of all the remarks and everything, I didn't feel I had to sit there and take the remarks.

Williams Dep. p. 223-24.

It seems clear from Plaintiff's deposition testimony that she did not believe she had quit, but rather that she had been "fired."   Ordinarily, such testimony could give rise to a claim of constructive discharge, which is an "adverse employment decision."  *Scott v. The Goodyear Tire & Rubber Co.,* 160 F.3d 1121 (6th Cir. 1998) (applying the McDonnell-Douglas burden shifting analysis in an age discrimination case).  But Plaintiff could not assert constructive discharge as an adverse employment action because she had failed to exhaust her administrative remedies with regard to such a claim.[9]

---

[9]   As discussed above, three days after Plaintiff gave her deposition, Plaintiff's counsel filed a Motion for leave to amend the original Complaint to add a constructive discharge claim. Docket No. 16.  Judge Trauger subsequently denied that Motion, finding that Plaintiff had failed to exhaust her administrative remedies with regard to such a claim, because she did not mention

Almost twenty years ago, the Sixth Circuit held that failing to raise a constructive discharge claim in an EEOC complaint would constitute a failure to exhaust administrative remedies on such a claim.  *Cedar v. Premier Industrial Corp.,* 869 F.2d 11489 (6th Cir. 1989).  At the time Plaintiff's counsel filed this action, he should have been aware of the facts that: (1) Plaintiff could not provide any evidence to show an adverse employment action, and (2) Plaintiff could not raise a claim of constructive discharge to show an adverse employment action, because Plaintiff had failed to exhaust her administrative remedies with regard to such a claim.  Thus, Plaintiff's counsel knew or should have known, at the time he filed the original Complaint, that he would be unable to prove an adverse employment action and, therefore, that he would be unable to establish a prima facie case of pregnancy discrimination.[10]

Under § 1927, a party is entitled to "excess" costs, expenses, and attorneys' fees "incurred because of" unreasonable and vexatious multiplication of the proceedings.  Defendant argues as follows:

> [S]anctions against Plaintiff and her attorney are warranted because they continue to pursue claims even after it was unmistakeable [*sic*] clear that one was not supported by the evidence (Plaintiff's pregnancy-based discrimination claim) and another was barred by the statute of limitations (Plaintiff's [intentional infliction of emotional

---

that claim in her charge of discrimination, nor was such a claim within the "expected scope of investigation" of the EEOC.  *See Dixon v. Ashcroft,* 392 F.3d 212 (6th Cir. 2004).

[10]  Defendant's argument concerning Plaintiff's inability to establish an adverse employment action is also very misleading.  As discussed above, it appears that Plaintiff never testified in her deposition that she voluntarily left her job with Defendant to return to school.  Rather, her testimony supports a claim of constructive discharge.  Defendant misrepresents Plaintiff's testimony, however, attempting to argue that Plaintiff testified that she never suffered an adverse employment action, rather than arguing that Plaintiff claimed to have suffered a constructive discharge, but that Plaintiff could not assert such a claim because she had failed to exhaust her administrative remedies.

23

distress] claim). As of January 12, 2006, the date of Plaintiff's deposition, it was undeniably evident that Plaintiff could not in good faith maintain an IIED claim. Further, there was no question (based upon Plaintiff's own deposition testimony) that Plaintiff had not been subjected to any adverse employment action as required to trigger a discrimination claim. Even so, Plaintiff and her attorney continued to pursue these claims despite defense counsel's repeated requests that they be withdrawn. *Plaintiff and her attorney proceeded with discovery and into the summary judgment phase of litigation thereby forcing White Castle to expend the time and money necessary to file for Summary Judgment on Plaintiff's discrimination claim.*

Docket No. 35, p. 10-11 (emphasis added, footnote omitted).

The Court agrees with Defendant's argument that the preparation of that portion of its Summary Judgment Motion concerning Plaintiff's pregnancy discrimination claim involved excess costs, expenses, and/or attorneys' fees. Therefore, the instant Motion should be GRANTED with regard to these excess costs, expenses, and/or attorneys' fees. Within 15 days of the entry of this Report and Recommendation, Defendant's counsel shall file an Affidavit establishing such excess costs, expenses, and/or attorneys' fees.

### B. Plaintiff's claim for intentional infliction of emotional distress was barred by the statute of limitations.

The Sixth Circuit has upheld the proposition that an attorney who files a claim that is barred by the statute of limitations commits a violation of § 1927. *Davis v. Bowron,* 2002 U.S. App. LEXIS 2318 (6th Cir.). The Sixth Circuit has also approved the imposition of sanctions under § 1927 where Plaintiff's counsel asserted claims under 42 U.S.C. § 1983 against Defendants, even though "he never attempted to demonstrate that either of the [Defendants] acted under color of state law in any respect that was material to [Plaintiff's] claims." *Id.*

In the case at bar, Plaintiff's initial complaint asserted a claim for intentional infliction of emotional distress. The factual allegations upon which this claim was based occurred at the latest,

24

on May 14, 2004, which was the last day of Plaintiff's employment. The statute of limitations for intentional infliction of emotional distress in Tennessee is generally one year. *See Whaley v. Perkins,* 197 S.W.3d 665, 670-71 (Tenn. 2006). Thus, that claim was barred by the statute of limitations when it was filed on June 22, 2005.

In his Response to the instant Motion, Plaintiff's counsel states as follows: "Plaintiff's counsel reasonably believed that the state cause of action, intentional infliction of emotional distress, related back to [Plaintiff's] timely claim of a Tennessee Human Rights Act violation under Rule 15.03 of the TRCP." Docket No. 38-1, p. 1. Plaintiff's counsel completely fails to explain, however, how he could have believed (reasonably or otherwise) that Plaintiff's claim for intentional infliction of emotional distress somehow related back to her claim of a Tennessee Human Rights Act violation. Plaintiff's counsel cites Tenn. R. Civ. P. 15.03, which provides as follows:

> **Relation Back of Amendments. –** Whenever the claim or defense asserted in the amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party or the naming of the party by or against whom a claim is asserted relates back if the foregoing provision is satisfied and if, within the period provided by law for commencing an action or within 120 days after the commencement of the action, the party to be brought in by amendment (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

It can readily be seen that Tenn. R. Civ. P. 15.03, which applies to "amended pleadings" cannot possibly have any application to Plaintiff's filing of her original Complaint. Plaintiff's counsel's explanation concerning "relation back" based upon Tenn. R. Civ. P. 15.03 is completely frivolous.

25

It does appear, however, that Plaintiff's counsel ultimately recognized that the intentional infliction of emotional distress claim was barred by the statute of limitations. As discussed above, on April 3, 2006, the parties submitted an agreed Order that dismissed that claim with prejudice.

Nevertheless, the Court concludes that Plaintiff's action, in asserting the claim of intentional infliction of emotional distress in the original Complaint, was a violation of § 1927. That violation persisted from the date the claim was filed, June 22, 2005, to April 3, 2006, when the agreed Order of dismissal was submitted. Therefore, the instant Motion should be GRANTED with regard to these excess costs, expenses, and/or attorneys' fees, and Defendant's counsel should be required to file an Affidavit concerning same. Within 15 days of the entry of this Report and Recommendation, Defendant's counsel shall file an Affidavit establishing such excess costs, expenses, and/or attorneys' fees.

## 2. **Plaintiff's First Motion to Amend sought to add claims that were barred by the statute of limitations.**

Plaintiff's first Motion to Amend sought to add claims for malicious harassment and outrageous conduct. Defendant filed a Response in Opposition to the Motion to Amend, arguing the both claims were barred by the applicable one-year statute of limitations. Docket No. 17-1.

Judge Trauger subsequently entered a "Memorandum and Order" denying Plaintiff's Motion for Leave to Amend to add claims for malicious harassment and outrageous conduct for futility. As Judge Trauger stated, "Even if these claims were to relate back to the filing of the original lawsuit on June 22, 2005, the Plaintiff's last day of employment with the Defendant was May 14, 2004;

26

therefore, the one-year statute of limitations that applies to both of these tort causes of action had expired by the time of the filing of the original complaint."[11]  Docket No. 18, p. 1-2.

For the same reasons as discussed above, Plaintiff's counsel violated § 1927 when he filed his first Motion for Leave to Amend.  Defendant filed a Response in Opposition to the First Motion for Leave to Amend, which involved excess costs, expenses, and/or attorneys' fees.  Therefore, the instant Motion should be GRANTED with regard to these excess costs, expenses, and/or attorneys' fees.  Within 15 days of the entry of this Report and Recommendation, Defendant's counsel shall file an Affidavit establishing such excess costs, expenses, and/or attorneys' fees.

### 3.  <u>Plaintiff's Second Motion to Amend contained claims that were both frivolous and barred by the statute of limitations.</u>

Plaintiff also filed a "Supplemental Motion for Leave to Amend the Original Complaint" (Docket No. 16), sometimes referred to herein as Plaintiff's Second Motion for Leave to Amend. In that Motion, Plaintiff sought leave to amend the original Complaint to add the following claims: (1) a Title VII constructive discharge claim, (2) a Tennessee Human Rights Act constructive

---

[11]  Judge Trauger's Memorandum and Order also recognized another reason why Plaintiff's proposed claim of malicious harassment would be futile:

> Moreover, a claim of malicious harassment is only properly based upon race, color, religion, ancestory or national origin.  Tenn. Code § 4-21-70.  Pregnancy harassment does not give rise to a claim under this statute.  *Parr v. Middle Tennessee State University,* 1999 WL 1086451 (Tenn. Ct. App., December 3, 1999).

Docket No. 18, p. 2 n.1.

discharge claim, (3) a Title VII retaliation claim, (4) a THRA retaliation claim, and (5) a 42 U.S.C. § 1983 Equal Protection claim. Docket No. 16, p. 1. The second Motion to Amend also stated:

> 2. That said claims arose out of the same conduct, transactions, or occurrences set forth in the Original Complaint and Plaintiff's First Motion for Leave to Amend the Original Complaint pursuant to Rule 15(c)(2) of the Federal Rules of Civil Procedure . . . .

*Id.,* p. 2.

Defendant also objected to Plaintiff's Second Motion to Amend. Docket No. 17-1. Defendant argued that Plaintiff's claims of retaliation and/or constructive discharge, pursuant to Title VII and/or the THRA, were barred because Plaintiff had not exhausted her administrative remedies with respect to those claims. Defendant submitted a copy of Plaintiff's charge of discrimination, which says nothing about retaliation and/or constructive discharge. Docket No. 17-4. Defendant further objected to Plaintiff's Second Motion for Leave to Amend to add a claim under 42 U.S.C. § 1983, because Plaintiff made no allegation that Defendant had acted under color of state law. Docket No. 17-1, p. 4-5.

Judge Trauger subsequently denied Plaintiff's Second Motion to Amend for futility, based the grounds set forth in Defendant's Response.

For the foregoing reasons, Plaintiff's counsel violated § 1927 when he filed the Second Motion to Amend, therefore, the instant Motion should be GRANTED with regard to these excess costs, expenses, and/or attorneys' fees. Within 15 days of the entry of this Report and Recommendation, Defendant's counsel shall file an Affidavit establishing such excess costs, expenses, and/or attorneys' fees.

**4.  Plaintiff's failure to withdraw the pregnancy discrimination claim.**

As discussed above, the Court has concluded that Plaintiff's assertion of a pregnancy discrimination claim in the original Complaint violated § 1927, and the undersigned has recommended an award of sanctions.  That award of sanctions covers all the excess costs, expenses, and/or attorneys' fees incurred by Defendant with regard to this claim, and Defendant is not entitled to any additional award of costs, expenses, and/or attorneys' fees because of Plaintiff's failure to withdraw the pregnancy discrimination claim.  Thus, the instant Motion should be DENIED with regard to Plaintiff's failure to withdraw the pregnancy discrimination claim.

**5.  Defendant's request for fees with regard to the instant Motion.**

In the instant Motion, Defendant states that it "specifically requests the Court: [to] award Defendant its attorneys' fees and costs incurred in filing the instant Motion. . . . ." Docket No. 34-1, p. 2.  Defendant, however, does not discuss this issue in its supporting Memorandum, nor does Defendant provide any authority for the proposition that the Court can or should award such attorneys' fees and costs.

Any costs, expenses and/or attorneys' fees incurred in connection with the filing of the instant Motion were incurred because Defendant wished to recover other costs, expenses and/or attorneys' fees.  Thus, any costs, expenses and attorneys' fees incurred in connection with the instant Motion were not incurred "because of" Plaintiff's unreasonable and vexatious multiplication of the proceedings in this case.  Therefore, that portion of the Motion seeking costs, expenses and/or attorneys' fees in connection with the filing of the instant Motion should be DENIED.

## IV.  Recommendation

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Sanctions (Docket No. 34) be GRANTED IN PART and DENIED IN PART.  Specifically,  the undersigned recommends that the instant Motion, to the extent that it seeks sanctions under Fed. R. Civ. P. 11, be DENIED.  The undersigned further recommends that the instant Motion, to the extent that it seeks an award of costs, expenses and/or attorneys' fees pursuant to 28 U.S.C. § 1927 be GRANTED, with regard to the following: (1) Plaintiff's filing of claims for pregnancy discrimination and intentional infliction of emotional distress in the Complaint; (2) Plaintiff's filing of her First Motion for Leave to Amend the Complaint; and (3) Plaintiff's filing of her Second Motion for Leave to Amend the Complaint.  The undersigned further recommends that the instant Motion, to the extent that it seeks an award of costs, expenses and/or attorneys' fees pursuant to 28 U.S.C. § 1927, be DENIED, with regard to Defendant's claims concerning Plaintiff's failure to withdraw the pregnancy discrimination claim and Defendant's request for an award of costs, expenses and/or attorneys' fees in connection with the filing of the instant Motion.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

_____

E. CLIFTON  KNOWLES
United States Magistrate Judge

31