IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KARA WILLIAMS,                )
                              )
        Plaintiff,             )
                              )
                              )
vs.                           )    CASE NO. 3:05-0496
                              )    JUDGE TRAUGER/KNOWLES
                              )
WHITE CASTLE SYSTEM, INC.,    )
                              )
        Defendant.             )

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to Judge Trauger's Order remanding this action to the undersigned for the computation of sanctions to be awarded against Plaintiff's former counsel in this action, Robert J. Martin.[1] Docket No. 71, p. 5. The undersigned previously submitted a Report and Recommendation recommending that sanctions be awarded against Plaintiff's counsel pursuant to 28 U.S.C. § 1927. Docket No. 52. Despite the objection of Plaintiff's counsel (Docket No. 62), Judge Trauger accepted the Report and Recommendation, affirming the award of sanctions against Plaintiff's counsel with regard to four actions: (1) the inclusion of claims for pregnancy discrimination in the original Complaint; (2) the inclusion of a claim for intentional infliction of emotional distress in the original Complaint; (3) Plaintiff's first Motion to Amend; and (4) Plaintiff's Supplemental (or Second) Motion to Amend. Docket No. 71.

---

[1] Plaintiff's former counsel was permitted to withdraw from representation of Plaintiff on October 19, 2006. Docket No. 41. For ease of reference, the Court will refer to him as "Plaintiff's counsel."

Pursuant to the Court's direction, Defendant's counsel filed a "Brief Regarding Attorneys' Fees" (Docket No. 58) and the accompanying Declaration of one of its counsel, Ms. Teresa Bult, submitted under the penalty of perjury pursuant to 28 U.S.C. § 1746. Docket No. 59. That Declaration established, in part, that the attorneys who worked on this matter billed at rates of $235 per hour and $195 per hour, that a paralegal who worked in the firm billed at $85 per hour, and that all these rates were reasonable for the Nashville area. Defendant also submitted the Declaration of James D. Kay, Jr., a Nashville attorney for more than 20 years, who also stated that counsel's rates ranging from $195 per hour to $235 per hour were within the reasonable, normal and customary standards for these types of cases in this legal community.

Ms. Bult's Declaration is accompanied by detailed billing records for the period August 18, 2005 (apparently when Defendant's counsel became involved in the case) until April 16, 2007 (when Judge Trauger accepted the undersigned's Report and Recommendation and granted Defendant's Motion for Summary Judgment). Docket Nos. 59-2 through 59-6. The Declaration states in part:

> It is our firm's policy to provide detail billing (i.e. a detailed summary of the work performed) with respect to each time entry included in a client's bill. Several of the time entries in Exhibit A reference work completed with respect to a specific cause of action, but the majority of the time entries relate to the overall defense of Plaintiff's lawsuit.

Docket No. 59-1, p. 2.

The Declaration establishes that Defendant incurred $2,184.00 in fees related specifically to Plaintiff's pregnancy discrimination claim; that Defendant incurred $936.00 in fees related specifically to Plaintiff's intentional infliction of emotional distress claim; and that Defendant incurred $2,339.50 in fees responding specifically to Plaintiff's First and Second Motions to

Amend. The Declaration further establishes that Defendant incurred an additional $56,401.00 in fees between August 2005 and April 2007 that were related to the defense of Plaintiff's overall claims, but that were not billed specifically with respect to an individual cause of action.[2] The Declaration asserts that, because Plaintiff's initial Complaint included three claims (pregnancy discrimination, pregnancy harassment, and intentional infliction of emotional distress), and the Court has granted sanctions with respect to two of those three claims, Defendant is entitled to the reduced amount of $37,600.66, which represents two-thirds of the "general" fees of $56,401.00 incurred by Defendant in responding to Plaintiff's Complaint. As will be discussed in greater detail below, Defendant did not seek sanctions with regard to Plaintiff's assertion of her pregnancy harassment claim, and the Court did not award any such sanctions.[3]

At the time Ms. Bult's Declaration was filed, Judge Trauger had not yet ruled on the undersigned's Report and Recommendation concerning the granting of sanctions against Plaintiff's counsel. After Defendant's Brief and the Declaration of Ms. Bult were filed, Plaintiff's counsel filed "Plaintiff's Written Objection to the Magistrate's [*sic*] Report and Recommendation." Docket No. 62. That Objection did not address the calculation of sanctions; rather, Plaintiff's counsel objected to the imposition of any sanctions.

On August 31, 2007, Plaintiff's counsel filed a "Motion for Extension in Which to File an

---

[2] The Declaration establishes that this general amount does not include the amounts discussed above relating to specific causes of action. The Declaration also establishes that this amount does not include any amounts Defendant's counsel incurred with respect to drafting its Motion for Sanctions.

[3] "It was never defense counsel's contention that Plaintiff or her attorney should be sanctioned for filing or pursuing her pregnancy *harassment* claim." Docket No. 61-1, p. 7 (emphasis in original).

3

Objection to the Defendant's Brief Regarding Attorneys' Fees." Docket No. 65. That Motion was granted in part, and Plaintiff's counsel was granted an extension to September 17, 2007, in which to file such Objection. Docket No. 66.

On September 17, 2007, Plaintiff's counsel filed "Plaintiff's Brief in Opposition to the Imposition of Attorneys' Fees Pursuant to § 1927." Docket No. 67. That Brief was accompanied by an Affidavit of Plaintiff's counsel. Docket No. 68. That Brief and Affidavit, however, did not address the issue of the amount of sanctions to be awarded. Rather, the Brief and Affidavit argue that sanctions should not be awarded at all. Shortly thereafter, Defendant filed an Objection to Plaintiff's Brief and Affidavit on those very grounds. Docket No. 69.

On December 7, 2007, Judge Trauger accepted the undersigned's Report and Recommendation (Docket No. 52) and affirmed the imposition of sanctions against Plaintiff's counsel. Docket No. 71. Judge Trauger remanded the case to the undersigned for the computation of the sanctions. *Id.*

Thereafter, Plaintiff's counsel filed a "Motion to Request In-Person Hearing." Docket No. 72. That Motion was granted (Docket No. 76), and the Court held a Hearing on May 28, 2008. At that Hearing, Plaintiff's counsel again failed to discuss the computation of sanctions, but focused solely upon the issue of whether sanctions should be awarded at all.

During that Hearing, the undersigned raised with Defendant's counsel the issue of whether *Phelan v. Bell*, 8 F.3d 369 (6th Cir. 1993) and *Hensley v. Eckerhart,* 461 U.S. 424 (1983) prohibited the Court from awarding fees by comparing the total number of issues in the case with those actually prevailed upon, as Defendant had suggested in its Brief. The Court granted Defendant's counsel ten (10) days in which to file a Brief on that issue, and also allowed

4

Plaintiff's counsel an additional ten (10) days in which to file additional materials.

Thereafter, Defendant filed a "Brief Regarding the Application of *Phelan v. Bell* to the Court's Award of Sanctions Pursuant to 28 U.S.C. § 1927." Docket No. 81. That Brief will be discussed in greater detail below. Plaintiff's counsel subsequently filed a "Supplemental Brief Regarding § 1927 Sanctions" (Docket No. 82) and another Affidavit of Plaintiff's counsel (Docket No. 83). Both the Brief and Affidavit of Plaintiff's counsel focused solely on the issue of whether sanctions should be imposed at all; neither addressed the computation of sanctions.

In short, Plaintiff's counsel has filed 3 Briefs (Docket Nos. 62, 67, 82), 2 Affidavits (Docket Nos. 68, 83), and he has appeared at a Hearing, since Defendant's counsel submitted her Brief and Declaration concerning the amount of sanctions Defendant seeks, but Plaintiff's counsel has not addressed the amount of sanctions to be imposed. Instead, Plaintiff's counsel has only addressed the issue of whether sanctions should be awarded at all. That issue, however, has already been decided by Judge Trauger. The only pending issue in this case is the amount of sanctions to be awarded, and, as discussed above, Plaintiff's counsel has made no argument whatsoever concerning this issue.

Based upon the Declaration of Ms. Bult, it seems clear that the amounts claimed that can be specifically identified as pertaining to the claims that are the subject of the sanctions can properly be awarded. Those fees are reasonable, based on counsel's reasonable hourly rates. The propriety of Defendant's request for two-thirds of the nonspecific fees that were billed, however, is problematic.

The starting point for the computation of sanctions under § 1927 is the language of the statute itself:

5

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously *may* be required by the court to satisfy personally the *excess* costs, expenses, and attorneys' fees *reasonably incurred because of such conduct.*

(Emphasis added).

The plain language of § 1927 limits the award of attorneys' fees thereunder to "excess" attorneys' fees "reasonably incurred because of" an attorney's multiplying proceedings in a case "unreasonably and vexatiously." This very specific language is at odds with the kind of proportional estimation advocated by Defendant. The burden of establishing the appropriate amount of sanctions is on Defendant. Obviously, Defendant's counsel could have completed their billing records in a manner that would have identified which claim was being worked on, but they failed to do so, and Plaintiff's counsel should not be held accountable for this failure.[4]

Moreover, in *Phelan v. Bell*, *supra*, the Sixth Circuit disapproved the proposition that attorneys' fees should be calculated by comparing the total number of issues in a case with the number of those actually prevailed upon. 8 F.3d at 374, *citing Hensley*, 461 U.S. at 435 n.11. Defendant distinguishes *Phelan* and *Hensley* because those cases involved the award of attorneys' fees and expenses under "prevailing party" provisions of applicable statutes, not the award of sanctions under 28 U.S.C. § 1927. Defendant argues in part as follows:

> Unlike "prevailing party" provisions, sanctions awarded pursuant to 28 U.S.C. § 1927 are not designed to make a party whole. *Red Carpet Studios Div. of Source Advantage, Ltd., v. Sater*, 465 F.3d 642 (6th Cir. 2007). Such sanctions do not hinge on the merits of a case, but rather, "empower the court to command obedience to the

---

[4] It appears that Defendant's counsel was considering as early as January 2006, to seek sanctions against Plaintiff's counsel. *See* Docket No. 34-1.

6

>           judiciary and to deter and punish those who abuse the judicial
>           process." *Id.* In other words, sanctions of this nature are punitive.
>           *Id.* Thus, it is within the Court's discretion to assess sanctions in
>           an amount it deems pertinent, not excessive and sufficient to deter
>           unsavory conduct. *Id.*

Docket No. 81, p. 7.

Defendant apparently agrees that attorneys' fees awarded under "prevailing party" provisions, which are designed to make a party whole, must not be calculated by comparing the total number of issues in the case with those actually prevailed upon, but Defendant argues that sanctions awarded under § 1927, which are punitive in nature, can be so calculated. The Court, however, sees no logical reason for such a distinction.

*Sater*, relied upon by Defendant, is one of the Sixth Circuit's more recent cases concerning § 1927, and it provides guidelines to be followed by this Court. The district court in *Sater* had granted § 1927 sanctions against Defendant's counsel in the amount of $10,000, which was "substantially less than the amount" sought by Plaintiff. 465 F.3d at 644. Defendant's counsel appealed, arguing that no sanctions should have been imposed, and Plaintiff also appealed, arguing that the Court erred in reducing the sanctions to $10,000. The Sixth Circuit, in upholding the amount of sanctions imposed by the district court, found that the district court had not abused its discretion, stating in part as follows:

>           Red Carpet contends that the district court erred in reducing the
>           sanctions amount to $10,000. The district court first reduced costs
>           to those it deemed pertinent and not excessive, and arrived at a
>           preliminary figure of $42,294.10. *The court then reduced the
>           amount to $10,000 which it found provided sufficient deterence
>           and punishment.*

465 F.3d at 647 (emphasis added).

In other words, the *Sater* Court held that the district court had not abused its discretion in

7

reducing the preliminary figure, which the district court had deemed "pertinent and not excessive," by approximately 75%, because the reduced amount provided "sufficient deterence and punishment." Thus, following *Sater,* the Court will first reduce the attorneys' fees to an amount that is pertinent and not excessive, and the Court will then consider what amount provides sufficient deterrence and punishment.

As discussed above, Plaintiff's Complaint contained claims of pregnancy harassment, pregnancy discrimination, and intentional infliction of emotional distress. Defendant did not seek sanctions with regard to Plaintiff's assertion of her pregnancy harassment claim. Under Defendant's "two-thirds" argument, Defendant is essentially seeking sanctions of $18,800.33 with regard to the pregnancy harassment claim, and an identical amount with regard to the emotional distress claim. These amounts, however, do not represent excess attorneys' fees reasonably incurred because of the conduct of Plaintiff's counsel.

Considering first the pregnancy discrimination claim, the Court notes that Defendant obviously would have incurred attorneys' fees in defending the pregnancy harassment claim if that had been the only claim raised by Plaintiff. Defendant has previously taken the position that almost all of the factual allegations Plaintiff relied upon in her deposition were related to the pregnancy harassment claim, not the pregnancy discrimination claim.[5] For that reason, the Court concludes that Defendant did not reasonably incur any excess costs in defending the pregnancy discrimination claim that it would not have otherwise incurred in defending the pregnancy harassment claim, with the exception of a reasonable amount that Defendant incurred in arguing

---

[5] Defendant has previously argued that only two of the factual allegations discussed by Plaintiff in her deposition pertained to discrimination, while "twenty-plus more [of Plaintiff's] allegations" were "relative to *harassment.*" Docket No. 61-1, p. 6 (emphasis in original).

8

that it was entitled to summary judgment on the pregnancy discrimination claim.

Defendant's Memorandum supporting her Motion for Summary Judgment addressed the only two claims that remained in the lawsuit at that time: (1) pregnancy discrimination, and (2) pregnancy harassment. Docket No. 31. Approximately ten (10) pages of the argument section of the Brief addressed pregnancy harassment, while approximately six (6) pages of the argument section addressed pregnancy discrimination. The Introduction and The Statement of Facts comprise approximately eight (8) pages. Additionally Defendant filed a "Statement of Undisputed Facts," consisting of approximately four (4) pages, which relies almost exclusively upon Plaintiff's deposition. Docket No. 32. Presumably, Defendant would have taken Plaintiff's deposition concerning her pregnancy harassment claim even if there had been no pregnancy discrimination claim, and, as discussed above, Defendant has taken the position that the vast majority of Plaintiff's factual "allegations" in her deposition related to harassment, not discrimination.

Defendant's arguments on the pregnancy discrimination claim were brief and straight-forward. Docket No. 31, p. 9-15. Defendant argued that Plaintiff's allegations of discrimination were not pregnancy based and that Plaintiff could not establish a prima facie case of discrimination. The Court takes judicial notice that Defendant's law firm claims "expertise" in employment litigation defense, and asserts that its attorneys can "handle the full range of litigation issues – from routine charges of discrimination to highly complex class action lawsuits." *http://www.constangy.com/service/litigation.html* (accessed July 15, 2008). The case at bar appears to involve a "routine charge" of discrimination, and, presumably, Defendant's counsel has filed hundreds or even thousands of similar Motions. The Court, therefore,

9

concludes that a reasonable amount of attorneys' fees for the preparation of that portion of the Motion for Summary Judgment addressing the pregnancy discrimination claim is $2,500.00.[6]

Likewise, the Court cannot accept Defendant's argument that it is entitled to attorneys' fees in the amount of $18,800.33 with regard to the intentional infliction of emotional distress claim. As discussed above, this amount represents attorneys' fees incurred from August 18, 2005, (apparently when Defendant's counsel began working on the case), to April 16, 2007 (the date of the last entry in Defendant's "billing detail"), approximately twenty months. Plaintiff's claim for intentional infliction of emotional distress, however, was dismissed by Agreed Stipulation on April 4, 2006. Thus, Defendant would have incurred attorneys' fees regarding the intentional infliction of emotional distress claim for only approximately 7-1/2 months (August 18, 2005, to April 4, 2006). The appropriate proportional amount for that claim, even under Defendant's theory, is $7,061.37, not $18,800.33.

Even if the Court were to accept this lower amount ($7,061.37), however, adding that amount to the $936.00 in fees related specifically to Plaintiff's intentional infliction of emotional distress claim would yield a total of $7,997.37 for Defendant's defense of that single claim. That claim, however, was clearly barred by the statute of limitations. Defendant could have had that claim dismissed merely by filing a one-page Motion with a one-page Legal Memorandum citing *Leach v. Taylor*, 124 S.W. 3d 87, 91 (Tenn. 2004) ("[I]ntentional infliction of emotional distress is a personal injury tort, governed by the general one-year statute of limitations. *Tenn. Code Ann. § 28-3-104 (2000)*"). Thus, the amount of attorneys' fees sought by Defendant with regard

---

[6] This $2,500.00 represents approximately 10.6 hours at $235.00 per hour and includes the $2,284.00 in fees specifically related to Plaintiff's pregnancy discrimination claim.

10

to the emotional distress claim, $18,800.33, does not represent excess attorneys' fees reasonably incurred because of the conduct of the Plaintiff's counsel.[7] Rather, the Court concludes that $940 (which represents 4 hours at $235 per hour) is a pertinent and not excessive amount concerning the emotional distress claim.

Finally, as discussed above, Defendant seeks $2,339.50 in attorneys' fees for responding specifically to Plaintiff's first and second Motions to Amend. Defendant filed a 5-page consolidated "Response and Objections" to both Motions.[8] Docket No. 17. Once again, Defendant's arguments were brief, straightforward, and not complex, and Judge Trauger denied both Motions to Amend in a single, 3-page Memorandum and Order. Docket No. 18. The Court concludes that the amount sought by Defendant with regard to the first and second Motions to Amend, $2,339.50, is pertinent and not excessive.

The Court determines that the total amount of attorneys' fees that is pertinent and not excessive is $5,775.50 ($2,500.00 for the pregnancy discrimination claim, plus $936.00 for the emotional distress claim, plus $2,339.50 for the Response to the Motions to Amend). The Court must now consider what amount of sanctions should actually be imposed to provide sufficient deterence and punishment.

The Court notes that Plaintiff's counsel has taken the matter of sanctions very seriously. As discussed above, he has filed 3 Briefs and 2 Affidavits attempting to explain why he took certain of the actions that he took in this case. During the hearing held May 28, 2008, Plaintiff's

---

[7] This amount would represent approximately 80 hours of work at a billable rate of $235 per hour.

[8] Defendant's filing is 6-pages in length, but the last page is a Certificate of Service, not substantive argument.

11

counsel apologized to the Court and to Defendant's counsel. He frankly admitted that he had made mistakes in this case, and that he had had a "fundamental misunderstanding" of some of the legal issues involved. He also stated his belief that the situation was "incredibly serious," and he stated, "I don't want to be before the Court on issues such as this." The Court concludes that a sanction in the amount of $2,000.00 will provide sufficient deterence and punishment.

For the foregoing reasons, the undersigned recommends that Defendant be awarded sanctions in the total amount of $2,000.00 against Plaintiff's counsel pursuant to 28 U.S.C. § 1927.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

_____
E. Clifton Knowles
United States Magistrate Judge

12